J-S02007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| B.F. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| E.J. f/k/a/ E.F. | : | |
| | : | |
| Appellant | : | No. 1524 MDA 2019 |

Appeal from the Order Entered August 21, 2019
In the Court of Common Pleas of Franklin County Civil Division at No(s):
2015-3589

BEFORE:  BENDER, P.J.E., KING, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.:          **FILED MARCH 11, 2020**

E.J. f/k/a E.F. (Mother) appeals from the custody order entered August 21, 2019, that awarded Mother and B.F. (Father) shared legal custody of A.F. (born in October of 2013) (Child).  The August 21st order also awarded primary physical custody of Child during the school year to Father, with partial physical custody to Mother.  During the summer months, the parties were awarded physical custody of Child on alternating weeks.  After review, we affirm.

The relevant scope and standard of review in custody matters are as follows:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it.  …  However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination.  …  Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not

interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

**R.M.G., Jr. v. F.M.G.**, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting **Bovard v. Baker**, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

on issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

**R.M.G., Jr., supra** at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. **Ketterer v. Seifert**, 902 A.2d 533, 539 (Pa. Super. 2006).

**A.V. v. S.T.**, 87 A.3d 818, 820 (Pa. Super. 2014). Moreover, "when making a custody award, '[t]he court shall delineate the reasons for its decision on the record in open court or in a written opinion or order.'" **M.J.M. v. M.L.G.**, 63 A.3d 331, 335 (Pa. Super. 2013). The court also is required to consider the factors contained in 23 Pa.C.S. § 5328(a) when awarding custody.

Mother raises the following issue for our review:

Did the Lower Court abuse its discretion and not consider the child's best interests by relying upon two factors as grounds to change custody of a minor child who had been in the Mother's primary care since the parties' separation?

Mother's brief at 6.

Here, in its opinion, the trial court set forth a procedural history of the case and provided facts within the context of responding to the custody factors set forth in section 5328(a). In addressing the custody factors, the court explained its reasons for issuing the August 21, 2019 order now on appeal. Most notably, the court mentions the high conflict and contentiousness of this custody case caused by Mother that has not lessened over the life of this matter.

The main thrust of Mother's argument is that the trial court relied heavily on two of the factors, namely, factors (a)(1) and (a)(13),[1] both of which it found weighed heavily against Mother and noted that the other factors generally were not weighted in favor of either party over the other. It is apparent that Mother's argument is essentially requesting that this Court re-find facts and re-weigh the evidence. However, our standard of review

_____

[1] The pertinent language of 23 Pa.C.S. § 5328(a) provides:

> (a) **Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> . . .
>
> (13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

requires that we "accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." ***C.R.F., III v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012). Rather, we "may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." ***E.D. v. M.P.***, 33 A.3d 73, 76 (Pa. Super. 2011). We do not conclude that that is the situation here. The trial court's findings are based on competent evidence contained in the record and its conclusions are not unreasonable.

We have reviewed the certified record, the parties' briefs, the applicable law, and the thorough, well-reasoned opinion authored by the Honorable Todd M. Sponseller of the Court of Common Pleas of Franklin County, dated August 21, 2019. We conclude that Judge Sponseller's opinion properly disposes of the issue presented by Mother in this appeal. Accordingly, we adopt the trial court's opinion as our own and affirm the custody order on that basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/11/2020

- 4 -

# IN THE COURT OF COMMON PLEAS OF THE 39th JUDICIAL DISTRICT
## OF PENNSYLVANIA – FRANKLIN COUNTY BRANCH

B.F.

~~Brian Funk~~

Plaintiff,

E.J.

v.

E.F.

~~Emily Jenkins~~ f/k/a ~~Emily Funk~~,

Defendant.

Case Type:    Civil Action - Custody

Case No.:    2015-3589

Judge:    Todd M. Sponseller

## OPINION AND ORDER OF COURT

**Before Sponseller, J.**

## IN THE COURT OF COMMON PLEAS OF THE 39ᵗʰ JUDICIAL DISTRICT OF PENNSYLVANIA – FRANKLIN COUNTY BRANCH

Brian Funk,
            Plaintiff,

            v.

Emily Jenkins f/k/a Emily Funk,
            Defendant.

:
:
:
:
:
:
:
:
:

Case Type:    Civil Action - Custody

Case No.:      2015-3589

Judge:          Todd M. Sponseller

## OPINION

### I.    OVERVIEW

Before the Court is the matter of custody of A.F. ("Child"), age 5. The trial in this matter was held on July 25 and July 26, 2019, at which ████████ *B.F.* ("Father") was represented by Nathaniel F. Spang, Esq., and *E.J.* ████████ f/k/a *E.F.* ████████, ("Mother") was represented by James K. Reed, Esq. The Court heard testimony from multiple witnesses for both sides and admitted numerous exhibits into evidence. Additionally, at the conclusion of the proceedings, the Court allowed both parties to submit briefs to the Court drawing upon the best interest factors found at 23 Pa. C.S.A. § 5328(a). The Court finds that Father initiated this custody action because Child has reached school age and the current custody Order is no longer feasible as the parties live in different school districts. After considering the evidence, the relevant law and the arguments of counsel, the Court finds that the best interests of A.F. would be served by allowing Mother and Father to share legal custody of A.F. and by allowing Father to exercise primary physical custody of Child with Mother exercising custody every other weekend during the school year and for Mother to have alternating weekly periods of physical custody throughout the summer. The Court's reasoning for this schedule is set forth in the Opinion below.

1

## II. PROCEDURAL HISTORY

This matter has a long and highly litigated history involving multiple protection from abuse matters filed in this Court as well as in Maryland, in addition to the current custody litigation. For the purposes of clarity and concision, this Opinion will include only the procedural history upon which the trial in this matter was predicated but will necessarily involve a discussion of the surrounding protection from abuse petitions which have implicated custody.

On January 15, 2019, Father filed a *Petition to Modify Custody*. On January 23, 2019, this Court entered an *Order of Court and Directive for Conciliation*, scheduling a conciliation conference to take place on February 28, 2019. On March 8, 2019, Conciliator David Rahauser, Esq. proposed his Conciliation Report to this Court, recommending no changes to the current custody Order, as the parties could not agree to any modification. On March 11, 2019, Father filed a motion requesting a Pre-Trial Conference, which this Court set for May 17, 2019. The Court convened the pre-trial conference and set the trial date for July 25 and 26, 2019.

In May, 2019 the parties submitted pre-trial memoranda and exhibit lists. On July 25 and 26, 2019 the Court convened the trial in this matter. Throughout the trial, we heard testimony from both of the parties, reviewed all relevant exhibits and evidence and reviewed the applicable law. On August 16, 2019, the parties each submitted their post-trial memorandums. This matter is now ripe for decision.

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The law is clear that "the paramount concern in a child custody case is the best interest of the child, based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral, and spiritual well-being and it can be made on a case-by-case basis." *Staub v. Staub*, 960 A.2d 848, 853 (Pa. Super. 2008). The Court, when determining what is in the best

2

interests of the child, must consider all of the factors that have been codified at 23 Pa. C.S. § 5328 as well as all other relevant factors. *See* 23 Pa. C.S. § 5328(a). In making a custody determination, the Court does not give preference to any party based on gender. *See* 23 Pa. C.S. § 5328(b).

1) **Best Interests Analysis**[1]

a) WHICH PARTY IS MORE LIKELY TO ENCOURAGE AND PERMIT FREQUENT AND CONTINUING CONTACT BETWEEN THE CHILD AND ANOTHER PARTY?[2]

The Court finds that Mother's conduct is openly hostile toward Father. This Court heard credible testimony that Mother attempted to thwart contact between the Child and Father on several occasions. Specifically, Mother obtained a protection from abuse order against paternal grandmother and grandfather, thereby providing a manufactured justification for withholding the Child from Father and paternal grandparents. The allegations which supported Mother's protection from abuse petition were shown to be false during a subsequent contempt hearing before this Court. Mother has also filed a protection from abuse action against Father in the State of Maryland on December 17, 2018, which was also ultimately dismissed. During Mother's cross-examination in the instant trial, she admitted to this pattern of conduct. On one occasion wherein Mother filed for a protection from abuse against Father in this county, this Court did enter a final protection Order. However, we note that it was entered into voluntarily by Father and without an admission as to the allegations in the Petition. Based on her past conduct, we find that Mother has employed the protection from abuse process both in the Commonwealth of Pennsylvania and in the State of Maryland in her efforts to prevent Father from exercising custody time with the Child.

---

[1] 23 Pa.C.S. § 5328(a).
[2] 23 Pa.C.S. § 5328(a)(1).

3

Additionally, Mother frequently contacts Father in a manner that hinders, rather than helps, the collaborative effort between the parties in co-parenting A.F. Mother frequently includes ~~█████████~~ G.J. (~~█████████████~~), her current husband, in the communication between her and Father, which proves to be detrimental to the relationship between the parties. These communications are discussed in detail below. *See* section "n," *infra*.

During the trial, Mother took ownership of her conduct and claimed that she has changed in a way that will allow her to cease participating in her aggressive conduct toward Father. Whether Mother's claims are genuine or not remains unclear at present. However, after reviewing the evidence and listening to the testimony of the parties we find that Father does not reciprocate this behavior toward Mother. In fact, it appears that Father attempts to communicate with Mother in a way that is straightforward and focuses on co-parenting the Child and relevant issues relating thereto.

This Court realizes that Mother's communication with Father does not directly interfere with the Child's ability to have frequent contact with Father. However, we also realize that Mother's communication does not foster an environment whereby the Child is encouraged to communicate with Father. We do find that Mother has used the judicial system to keep Father and his family from seeing the Child. On the other hand, due to Father's lack of hostility toward Mother, we find that Father is more likely to permit and encourage frequent contact between Child and Mother. Therefore, this factor falls strongly in favor of Father.

b) THE PRESENT AND PAST ABUSE COMMITTED BY A PARTY OR MEMBER OF THE PARTY'S HOUSEHOLD, WHETHER THERE IS A CONTINUED RISK OF HARM TO THE CHILDREN OR AN

4

ABUSED PARTY AND WHICH PARTY CAN BETTER PROVIDE ADEQUATE PHYSICAL

SAFEGUARDS AND SUPERVISION OF THE CHILD.[3]

The Court heard no evidence which supports a finding that either party is likely to be abusive

to the Child. Mother has made numerous allegations of abuse against Father and Father's

parents. We find those allegations to be non-credible and Mother's protection petitions to be

meritless and/or frivolous, if not fraudulent. Therefore, this factor does not fall in favor of either

party.

c) THE INFORMATION SET FORTH IN 5329.1(A) AND (2) (RELATING TO CONSIDERATION OF

CHILD ABUSE AND INVOLVEMENT WITH PROTECTIVE SERVICES).[4]

The Court heard no evidence that any abuse of the Child took place or that any agency has

had involvement with the parties regarding the care of A.F. Therefore, this factor does not fall in

favor of either party.

d) THE PARENTAL DUTIES PERFORMED BY EACH PARTY ON BEHALF OF THE CHILD.[5]

It is evident that both parties performed parental duties on behalf of the Child. The Court is

cognizant that, due to the fact that Mother has had more custodial time of the Child, she has

performed more of these duties. However, this Court finds that each party is able to adequately

care for the Child. Thus, this factor does not weigh in favor of either party.

e) THE NEED FOR STABILITY AND CONTINUITY IN THE CHILD'S EDUCATION, FAMILY LIFE, AND

COMMUNITY LIFE.[6]

---

[3] 23 Pa.C.S. § 5328(a)(2).
[4] 23 Pa.C.S. § 5328(a)(2.1).
[5] 23 Pa.C.S. § 5328(a)(3).
[6] 23 Pa.C.S. § 5328(a)(4).

5

It is clear to this Court that stability and continuity are positive attributes in any child's life, including A.F.'s. The Court notes that both Mother and Father are stable in where they live. Nonetheless, the parties do not live within the same school district or community.

Father lives in Greencastle, Pennsylvania and has lived here for the entirety of Child's life. The Child is familiar with Father's home and the community where Father's home is situated. If the Child were to live with Father she would attend the Shalom Christian Academy, which is located near Father's home. Moreover, Father provided evidence and testimony that he allows the Child to engage in community-based events and consistently encourages the Child to become rooted within the Greencastle area. By reviewing Father's ability to provide stability for the Child, the Court notes that Father satisfies this custody factor.

Similarly, Mother also has a stable life. Mother lives in Mount Airy, Maryland, as she has for several years. The Child is also familiar with Mother's house and neighborhood. If the Child were to live with Mother she would attend either Little Traveler's School or Lisbon Elementary School. Like Father, Mother also allows the Child to participate in various community activities. Mother fosters an environment of stability and continuity for the Child with regard to this factor and satisfies it.

Based on the above discussion, this factor does fall in favor of either party.

f) THE AVAILABILITY OF EXTENDED FAMILY.[7]

This Court heard testimony that each party has extended family in the area. Therefore, this factor does not fall in favor of either party.

g) THE CHILD'S SIBLING RELATIONSHIPS.[8]

---

[7] 23 Pa.C.S. § 5328(a)(5).
[8] 23 Pa.C.S. § 5328(a)(6).

6

A.F. has one half-sibling on Mother's side. The Child has no siblings on Father's side. The Court is satisfied that the Child has a strong bond with her half-sibling. Based on the Child's relationship with her half-brother on Mother's side, this factor slightly favors Mother.

h) THE WELL-REASONED PREFERENCES OF THE CHILD, BASED ON THE CHILD'S MATURITY AND JUDGMENT.[9]

The Court did not interview the Child, due to her tender age. Therefore, the Court does not consider this factor.

i) THE ATTEMPTS OF A PARENT TO TURN THE CHILD AGAINST THE OTHER PARENT, EXCEPT IN CASES OF DOMESTIC VIOLENCE WHERE REASONABLE SAFETY MEASURES ARE NECESSARY TO PROTECT THE CHILD FROM HARM.[10]

The Court heard evidence of a strained relationship between the parties. Specifically, the Court finds that Mother has instigated this conduct and has now enlisted her current husband in her harassing conduct, via repeated text messages. However, the evidence presented at trial did not suggest that Mother or Father attempted to turn the Child against the other party. The Court notes that Mother sent Father a video message of Child in an attempt to "guilt" Father into changing his periods of custody of Child. In essence, the video message was comprised of the Child asking Father to let the Child go to a birthday party with Mother, during Father's custodial weekend. The Court does not consider this to weigh against Mother as an attempt to turn the Child against Father. However, this is only because the Child is so young and is unlikely to realize Mother's attempts at manipulation of Father. Therefore, the Court cautions Mother against this pattern of conduct in the future, because it contributes to a hostile relationship between the parties.

---

[9] 23 Pa.C.S. § 5328(a)(7).
[10] 23 Pa.C.S. § 5328(a)(8).

7

Barring the above-mentioned video message from Mother to Father, no evidence presented at trial addressed the efforts of the parties to turn the Child against the other party. Therefore, this factor does not weight in favor of either party.

j) WHICH PARTY IS MORE LIKELY TO MAINTAIN A LOVING, STABLE, CONSISTENT, AND NURTURING RELATIONSHIP WITH THE CHILD ADEQUATE FOR THE CHILD'S EMOTIONAL NEEDS.[11]

Each party provides a loving, stable, consistent and nurturing relationship for the Child. Therefore, this factor does not weigh in favor of either party.

k) WHICH PARTY IS MORE LIKELY TO ATTEND TO THE DAILY PHYSICAL, EMOTIONAL, DEVELOPMENTAL, EDUCATIONAL, AND SPECIAL NEEDS OF THE CHILD.[12]

Both of the parties have the ability and willingness to attend to the physical, emotional, developmental, educational and special needs of the Child.

Mother has had more time, up to this point, to bond with the Child and provide for the Child's needs. She testified credibly that she is able to provide for all of the Child's daily needs and has done so for several years after the couple separated. This is further evidenced by Mother's training and continuous work in the field of education, which undoubtedly helps Mother navigate and assist A.F. in her daily goals and developmental benchmarks. Furthermore, as discussed above, Mother has a stable environment for the Child and has a plan for where to send the Child to school, if she were to maintain primary custody.

Father is also a very stable person. He is able to provide A.F. with all aspects of support in her daily life. Father spends time and resources in planning outings with A.F. and has researched the school where he would like A.F. to attend in the next school year. Father has a

---

[11] 23 Pa.C.S. § 5328(a)(9).
[12] 23 Pa.C.S. § 5328(a)(10).

8

stable job and owns the home where he lives and raises A.F. Therefore, this Court is confident

that Father can provide for all of A.F.'s needs from day-to-day.

The Court does not find that this factor favors either party.

l) The proximity of the residences of the parties.[13]

The parties live about an hour apart. The Court has considered this factor in reaching its

decision.

m) Each party's availability to care for the child or ability to make appropriate child-care arrangements.[14]

Based on the evidence presented during trial, it appears that each party has the ability to

appropriately ensure child-care arrangements for the child when such arrangements are

necessary. This factor does not weigh in favor of either party.

n) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.[15]

It is clear that a high level of conflict exists between the parties. At trial it was established

that Mother has utilized the domestic violence protection system in two states for waging the

instant custody war upon Father. Further, Mother involves her current spouse in her efforts at

sending degrading, harassing and offensive text messages to Father.

First, it was shown that Mother filed for protection from abuse petitions against Father

and his parents in both Maryland and Pennsylvania. One such petition was entered against Father

by stipulation and without admission. However, the other protection from abuse petitions were

---

[13] 23 Pa.C.S. § 5328(a)(11).
[14] 23 Pa.C.S. § 5328(a)(12).
[15] 23 Pa.C.S. § 5328(a)(13).

9

dismissed as meritless. Mother continues to use the Protection Order in Franklin County as a sword against Father, taunting him, being argumentative with him and threatening him with contempt proceedings if he fails to comply with her demands. One specific demonstration of this was when Mother went so far as to have contempt proceedings initiated against Father in Maryland, only to fail to appear for the hearings and apparently abandoned her claims, after Father spent money on legal representation and missed work for two separate court appearances. We find that this misuse of a system that is meant to protect individuals sincerely in danger of actual domestic violence and abusive behavior to be particularly repugnant and causes this factor to weigh heavily against Mother.

Second, this Court heard testimony that Mother harasses Father via text messages wherein Mother and her husband, G.J., "double team" Father and criticize him about various issues related to parenting A.F. In one text thread G.J. lectured Father about the meaning of "respect," implying that Father was not raising A.F. in a way that comported with G.J.'s parenting style, accused Father of lying to him and Mother and told Father that Child "is living under a G.J. roof and will be raised [in a manner that comports therewith]." In a different text message thread, Mother engaged Father in a discussion regarding the Child's education but, when Father asked about why Mother was late for a custody exchange, Mother threatened Father by stating "you need to stop bud [... because] you are dangerously close to a PFA violation." In yet a different text message conversation, G.J. and Mother ask Father about whether he bathed, fed and put Child to sleep for a nap. When Father did not answer, G.J. claimed that he and Mother would "take [Father's] silence as a [...] simple co-parenting failure" and ranted on that the Child has "an odor" that Mother had to address when Mother exercises her period of custody.

10

The Court, having reviewed the above-mentioned evidence, finds that Mother's conduct in this regard is reprehensible. As is customary, we reviewed the evidence in the instant matter holistically, placing the communication between the parties in its original context. When doing so, this Court finds that Father—despite being met with consistent opposition by Mother regarding his care for the Child—does not respond in an aggressive manner, as Mother suggested during her testimony at trial. This conduct is so one-sided that we are compelled to commend Father's lack of hostility toward Mother, despite not being offered the same decency in return.

As such, the Court finds that Mother's conduct is troubling. Likewise, the Court finds that Mother's involvement of G.J. ██████████ in her communication with Father to be troubling. This is so given the fact that G.J. ██████ is not a named party to this custody dispute and, but for being married to Mother, would not be involved in A.F.'s upbringing. Consequently, this Court has taken the unusual but necessary step of ordering Mother to only contact Father alone, regarding A.F. and not with or by any third party, including her husband. *See* the attached Order of Court.

We find that this factor weighs heavily in Father's favor and weighs heavily against Mother.

o) THE HISTORY OF DRUG OR ALCOHOL ABUSE OF A PARTY OR MEMBER OF A PARTY'S HOUSEHOLD.[16]

There was no evidence presented that Father or Mother or any members of either party's household has a history of substance abuse. This factor does not weigh in favor of either party.

p) THE MENTAL AND PHYSICAL CONDITION OF A PARTY OR MEMBER OF A PARTY'S HOUSEHOLD.[17]

There was no evidence presented that Father or Mother have physical ailments. Both parties appear to be in good health. This factor does not weigh in favor of either party.

---

[16] 23 Pa.C.S. § 5328(a)(14).
[17] 23 Pa.C.S. § 5328(a)(15).

11

q) ANY OTHER RELEVANT FACTOR.[18]

In making its determination, the Court considered all relevant factors that affect the children's well-being.

## IV. CONCLUSION

The Court finds that both parties have provided for all aspects of the health of A.F. This is evidenced by the testimony and evidence at trial. It is evident that both parties care for the Child and we are confident that the parties will continue to provide for the Child in the future. However, the Court is also aware that an ongoing conflict exists between Mother and Father. The Court, after reviewing the evidence in this matter, finds that the hostility comes from Mother against Father. Nonetheless, the Court finds that Father meets Mother's hostility without responding in kind and, instead, seems to maintain the mindset that the Child is the most important party in this matter. The Court finds that Father's approach to his communication with Mother demonstrates an overall positive mentality that will be helpful to the Child. An Order of Court consistent with this Opinion follows.

---

[18] 23 Pa.C.S. § 5328(a)(16).